THOMAS WATERMAN *v.* OLIVER COCHRAN, ZACHARIAH WHITING, and DEXTER WHITING.

*(In Chancery.)*

Where lands are conveyed by A. to B., by an absolute deed on the face of it, with a resulting trust to A., it is necessary, to charge the lands with the trust in the hands of C., a purchaser for a valuable consideration, that C. should have had notice of the trust at the time of the purchase or before the payment of the consideration money, and this must be so alleged in the orator's bill, and it is then incumbent on the defendant to make an express and direct denial of such notice in his answer.

Courts of chancery have power to assist a judgment creditor, who has caused his execution to be issued and levied as far as practicable, or returned *nulla bona,* not only to discover, but to reach the property of a debtor in the possession of a trustee and beyond the reach of an execution, and the equitable interests of a debtor, as a resulting trust in property can, ordinarily, be reached only in chancery.

Where A. had conveyed his lands to B. to be sold, and out of the proceeds to pay certain debts of A., with a resulting trust to account to A. himself for the surplus, and a judgment creditor of A. had extended his execution on a portion of the lands, which had been sold by B., for a valuable consideration paid him by the purchaser, without notice of the trust; it was held that the purchaser could not be disturbed in his title, but B. was decreed to pay the creditor of A. his debt out of the *surplus* of the proceeds of the land remaining in his hands.

B. was also decreed to pay the orator's costs; and not allowed to retain them out of the trust fund, having by his answer denied the trust and claimed the sale to have been absolute.

THE orator, in his bill, set forth and charged in substance that, on the first day of March, 1824, the defendant Cochran, owned in fee a tract of land in Johnson, in the county of Franklin, (now Lamoille,) describing it by metes and bounds, containing one hundred acres, and of the value of eight hundred dollars; that said land was, at the time, subject to a mortgage, executed by Cochran to James Harper of New Boston, in the state of New Hampshire, to secure the payment of two hundred and two dollars; that, on the first of April, 1827, Cochran procured Daniel Dodge and Joseph Waterman to sign with him, as sureties, a note for one hundred and fifty dollars, made payable to the Bank of Montpelier, which was discounted at said bank, and, to secure said Daniel and Joseph from all damages and costs therefrom, executed to them a deed of said premises; that, on the 24th of April, 1827, Cochran entered into an agreement with the defendant, Zachariah

Whiting, whereby the latter was to pay the said note to the Bank of Montpelier, and Cochran was to deed to him the land aforesaid to secure him therefor ; that, in pursuance of such agreement, Cochran then executed to said Zachariah, a deed of said land, and thereupon the deed excuted by Cochran to Dodge and Joseph Waterman was cancelled ; that there was no other consideration for the deed from Cochran to said Zachariah, than the agreement of the latter to pay said note to said bank ; that, at the time of the execution of the last mentioned deed, it was further agreed between the parties thereto, that, although the deed was absolute in its terms, yet, it should have no other effect between them than a deed of trust or mortgage, and that, after said Zachariah should have sold said land, he was to account with Cochran for whatever sum the land sold for over and above the amount of said note to said bank and the mortgage to Harper ; that Cochran remained in possession of the land several years after the execution of the deed to the said Zachariah ; that, in April, 1830, the said Zachariah sold seventy-five acres of said land to Benjamin Atwell, for $650 ; that, on the fourth of October, 1830, Cochran was indebted to the orator in the sum of seventy dollars, and that the orator then prayed out a writ of attachment against Cochran, and attached thereon the twenty-five acres of said land then remaining in the possession of said Zachariah unsold, which the orator was informed and believed the said Zachariah then held in trust for Cochran ; that, on the first day of November, 1830, the orator recovered a judgment in his favor and against Cochran, in said suit, for $61,60 damages and $2,80 costs ; that the orator, on the same day, prayed out a writ of execution on said judgment, and, within the life thereof, caused it to be levied upon eleven and three-fourths acres of the land so attached, (describing it) in satisfaction of said judgment and all costs ; that, a short time after the attachment was made as aforesaid, the said Zachariah, by deed, conveyed said twenty-five acres of land to Dexter Whiting, the other defendant—the said Zachariah and Dexter having at the time full knowledge of the orator's attachment ; that, the orator was informed and believed that the said Zachariah, after said attachment and levy, paid said Cochran, in pursuance of the trust and agreement between

them, about three hundred dollars, or that said Zachariah held that sum in trust for Cochran; that said trust was to the prejudice and exclusive of the rights of the orator and other creditors of Cochran; that the deed from Cochran to the said Zachariah was executed upon a fraudulent and secret trust, the design of which was to place the property thereby conveyed in the hands of said Zachariah, for the use and benefit of Cochran and beyond the reach of his creditors; and the orator prayed that the defendants might be decreed to pay to the orator the full amount of his judgment against Cochran, or that the title of the said Zachariah and Dexter to that portion of said land upon which said execution was levied, might be vacated and set aside, and for further relief.

The bill was taken as confessed, against Cochran.

The defendant, Zachariah Whiting, in his several answer, stated, that a short time previous to the 24th of April, 1827, the defendant Cochran informed the said Zachariah that he, Cochran, was indebted to Daniel Fuller, Jr., in the sum of two hundred and two dollars, for which Cochran gave his note, and Jacob Harper, Jr. signed said note as surety ; that, to secure said Harper for signing said note, Cochran executed the mortgage to Harper, mentioned in the orator's bill ; that the note to said Fuller had been long due, and he, Cochran, expected a suit thereon ; that he was wholly unable to pay the note to said bank, and his sureties would have it to pay ; that he should be turned off his farm, and requested this defendant to pay said debts and take the farm and suffer him, Cochran, to remain in possession thereof some specified time ; that this defendant entered into an agreement with Cochran, in and by which this defendant agreed to pay the note to said bank and the note to said Fuller, and let Cochran have the use of said farm for three years from the 24th day of April, 1827, and, in consideration thereof, Cochran agreed to deed the farm to this defendant and procure the deed from Cochran to Dodge and Joseph Waterman to be given up; that, thereupon, Cochran executed to this defendant a deed of the farm, dated the same 24th day of April, 1827 ; that this defendant paid the note to said bank, and also the note to Fuller, the latter note and interest amounting

*[margin:]* LAMOILLE, August, 1839.

Waterman v. Cochran et al.

to $225, besides five dollars paid to Harper for cost and trouble, also taxes, &c., which payments, and said three years' use of said farm by Cochran, were to be in full consideration of said farm ; that there was no understanding or agreement, at the time said deed was executed, that this defendant was to re-deed said land, or any part thereof, to Cochran, upon any contingency whatever ; that, at the time said deed was executed, this defendant considered that he was making a fair purchase of said farm, and that he was paying therefor all that he was willing to pay under such circumstances, as he was obliged to hire the money to pay the note to said bank at exorbitant interest ; that the deed was absolute, and was intended to convey all Cochran's interest therein, and that there was no contract, agreement or understanding between Cochran and this defendant, at the time of said purchase, that said deed was to be considered in the nature of a mortgage, nor was it a trust deed, nor in the nature of a trust, nor was this defendant in any manner to account with Cochran for said land, or the proceeds of any sales thereof which this defendant might make, nor was he to pay any other or greater sum therefor to said Cochran, than the debts above set forth and three years' use of said farm, and that said sale from Cochran to this defendant was *bona fide* ; that Cochran continued in possession of the farm, as stated in the orator's bill, but that he so continued in possession under the agreement before stated ; that this defendant had no knowledge of the indebtedness of Cochran, nor that he owed any debts, nor of the orator's judgment against Cochran, nor of the attachment of the land by the orator, but admitted that he had heard of Cochran's indebtedness, and of the attachment and judgment of the orator ; that, a long time after the execution of the deed from Cochran to this defendant, and after the payment by this defendant of the bank note and the note to Fuller, this defendant was in company with Cochran and his wife, at which time they both stated that they thought this defendant ought to pay something more than he had paid for said farm ; that this defendant replied that he should have to sell the farm, and if he had good luck in selling it, he would do what was right about it, but if he should see fit to give any thing he should give it to Cochran's wife as a present ; that this

was all the obligation this defendant was ever under to pay Cochran any greater sum for said farm than was paid at the time of the purchase, and insisted that this did not make him liable to pay any thing more to Cochran or his creditors, than had been already paid; that, before Cochran's family left the country, and before the levy of the execution in favor of the orator upon said land, this defendant had given to the wife of Cochran about one hundred and fifty dollars, (the exact sum he could not state;) that this sum was given as a mere present, as this defendant was under no legal nor equitable obligation to give it, but, as he had sold the farm at a greater price than he had expected to get for it, and as the family of Cochran were very poor and destitute, he gave the said sum as a mere act of charity; and this defendant admitted the sale of the seventy-five acres of the land to Atwell for $650, and of the remaining twenty-five acres to Dexter Whiting for one hundred dollars, but stated that said sales were *bona fide* and without fraud or any intention to defraud Cochran, or any of his creditors, and denied that he had any money or other property in his hands belonging to Cochran, or that he was in any way liable to pay any money or other property to Cochran, or that he had paid to Cochran, since taking his deed, any money or property except as above stated.

The defendant, Dexter Whiting, in his answer, stated, that for a long time before and at the time when Cochran conveyed the farm to Zachariah Whiting, this defendant resided in New Boston, in the state of New Hampshire, and that he continued to reside there until March, 1832; that in October, 1830, he came to Johnson on a visit, and, while there, purchased of the said Zachariah the twenty five acres of land described in the orator's bill and took a deed thereof, as set forth in the orator's bill, and, at the time of taking such deed, agreed to pay the said Zachariah one hundred dollars in money, or one hundred and twenty five dollars in cattle, for said land, and that he had since paid therefor one hundred dollars in money; that, at the time of making the purchase, the said Zachariah was in possession of the land; that the purchase was made in good faith and without any intention of defrauding Cochran or any of his creditors; that, at the time of said purchase, this defendant was informed and

believed that the said Zachariah had a good and indefeasible title to the land and that the deed from Cochran to said Zachariah was *bona fide* and upon good consideration and that he (this defendant) had no knowledge, information or notice that said deed from Cochran was a mortgage or that it was so intended by the parties, or that there was any agreement or understanding between the parties thereto that the deed was to be defeated upon the payment of any sum whatever by Cochran to said Zachariah; that this defendant had no knowledge, previous to nor at the time of taking the deed from said Zachariah of said twenty five acres of land, nor was he informed or notified that the deed from Cochran to said Zachariah was a deed of trust, or that there was any trust, secret or otherwise, between them, in regard to said farm; that this defendant, at the time he took his deed from said Zachariah, did not know, nor had he been informed or notified that said land had been attached by the orator or any other person.

The answers were traversed and testimony was taken.

The facts, proved by the testimony, sufficiently appear in the opinion of the court.

After argument by *H. R. Beardsley*, for the orator, who cited 2 Johns. Ch. R. 35; 3 do. 481; 4 Johns. R. 536; *Boyd & Suydam* v. *Dunlop*, 1 Johns. Ch. R. 478; *Jewett* v. *Palmer*, 7 do. 65; *Cunningham* v. *Erwin*, 1 Hop. R. 48; and by

*S. S. Brown* and *L. B. Vilas*, for the defendants, who cited 1 Har. Ch. 18; 1 Johns. Ch. R. 213; 10 Johns. R. 185; 14 do. 407; 1 Johns. Ch. R. 300; Fonb. Eq. 126; 2 Swift's Dig. 46; 4 Vt. R. 518; 6 do. 328; 1 Hopkin's R. 59; 2 Swift's Dig. 16; 4 Vt. R. 389;

The opinion of the court was delivered by

BENNETT, Chancellor.—The orator seeks, by his bill, to set aside the conveyance from Cochran to Zachariah Whiting and from Zachariah Whiting to Dexter Whiting, at least, so far as may be necessary to perfect and quiet his title to that portion of the premises levied upon under his execution against Cochran, or that the said Zachariah and Dexter Whiting may be decreed to pay the orator the amount of his debt against Cochran.

LAMOILLE,
*August,*
1839.

Waterman
*v.*
Cochran *et al.*

The bill proceeds upon the ground that the conveyance from Cochran to Zachariah Whiting, was a fraudulent and deceitful conveyance, made upon a fraudulent and secret trust, for the benefit of Cochran, and designed to place the property beyond the reach of his creditors, and that Dexter Whiting was privy to the same, and well understood the character of the transaction. The bill is taken as confessed against Cochran, and Zachariah Whiting denies, in his answer, very fully all fraud, and also that there was any trust existing between him and Cochran at the time of the conveyance which was in any way to enure to the benefit of Cochran. The answer, in this respect, stands contradicted by a great number of witnesses who testify very fully to the admissions of Zachariah Whiting, which go to show that he held this property in trust for the benefit of Cochran, after the satisfaction of the mortgage debt due to Harper at the time of the conveyance, and the payment of the Montpelier bank debt. The disparity between the value of the premises conveyed and the sums paid lead us to the same conclusion. It seems, from the current of the testimony, that the premises were worth seven or eight hundred dollars, and that Zachariah Whiting received in fact upon their sales seven hundred and fifty dollars, and has paid as a consideration for them only about $350. The payment of the $150, to the wife of Cochran by Zachariah Whiting after the sale, though he claims in his answer that this was by way of gift, and as a present to the wife, and not on the ground that he had taken the conveyance of the premises under any trust for her husband, goes far to satisfy the mind that there must, at least, have been an implied trust.

On a careful examination of the whole testimony in the case, we have no doubt that a trust existed between Cochran and Zachariah Whiting upon the conveyance of this estate which was to enure to the benefit of Cochran, though it might not have been created in express language. But we are not entirely satisfied, from the evidence, that an actual fraud was intended, though it has in effect, all the operation of fraud, as against the creditors of Cochran. It seems that in the spring preceding the plaintiff's attachment, Zachariah Whiting had sold seventy five acres of the farm to one Atwell, for which the latter paid $650, and no question is

LAMOILLE,
August,
1839.

Waterman
v
Cochran et al.

made about Atwell's purchase having been made on his part without notice, and *bona fide* and upon a full and valuable consideration. In no event, then, could he be disturbed in his purchase. The remaining seventy five acres was attached by the orator as the property of Cochran, while the title remained in Zachariah Whiting. Soon after the attachment the latter sold and conveyed this same portion of the farm to Dexter Whiting, and the orator, after the sale, proceeded to extend his execution on a part of it, and now claims to have the deed from Cochran to Zachariah Whiting, and also the deed from Zachariah to Dexter Whiting vacated, so far, at least, as may be necessary to quiet his title. It is alleged in the bill, that, at the time of the purchase of the twenty five acres by Dexter Whiting, he had notice of the orator's attachment, yet, it is not averred in the bill that he had notice of the existing trust upon which he held the lands.

In order to charge the lands in the hands of Dexter Whiting with this trust, he must have had either at the time of the purchase, or before the payment of the purchase money, notice of the existence of such trust, and this should be so alleged in the bill, and it would then become the duty of the defendant, in his answer, not only to make a denial of the notice before the purchase, but also before the payment of the purchase money. The answer of Dexter Whiting seems to have been drawn upon the supposition that the bill contained, at least, an averment of notice, at the time of the purchase, and contains an express and positive denial of notice at that time, but is silent in regard to it at the time of the payment of the consideration money. In this respect the answer would have been entirely insufficient, had the bill stated a notice. Upon this bill we cannot vacate the title of Dexter Whiting to any part of the twenty five acres. He will therefore be dismissed, but, under the particular circumstances of the case, without costs.

The next enquiry presented for our consideration is, whether the orator is entitled to a decree against Zachariah Whiting for the payment of his debt. It is said, in argument, that though he may have in his hands certain proceeds of this farm, which may belong to Cochran, yet, it is but a debt due him, and chancery will not take jurisdiction and order the money paid to his creditor.

We have no doubt, that this is a case of appropriate chancery jurisdiction. The orator first seeks to quiet his title at law to the lands he had levied upon, by having the deeds to the Whitings vacated on the ground of fraud. If he failed in this it was his object to reach the funds in the hands of this defendant which he held in trust for Cochran.

Though courts of law and equity have concurrent jurisdiction in matters of fraud, yet, for the most part, matters of trust and confidence are exclusively cognizable in courts of equity, and chancery would have afforded Cochran an appropriate remedy. The only question that needs any examination is, whether the orator, as his judgment creditor, stands in his place and succeeds to his rights. It seems to be well settled that courts of chancery have power to assist a judgment creditor, not only to discover, but to reach the property of the debtor in the hands of a trustee and beyond the reach of an execution at law; and that, to get possession of the equitable interest of a debtor, as a resulting trust in goods and chattels, the judgment creditor must come into chancery, except, perhaps, that in some cases he might be relieved by the trustee process. It is necessary, however, that, before a judgment creditor can come into this court for relief, he should first take out execution and cause it to be levied, or returned *nulla bona,* so as to show thereby that his remedy at law fails, and that he has also, by that act of diligence, acquired a legal preference to the debtor's interest. The plaintiff, in the present case, caused his execution to be returned *non est* as to the body and personal estate of his debtor, and for want thereof extended it upon the land. *Angell* v. *Draper,* 1 Vernon's R. 399. *Taylor* v. *Jones,* 2 Atk. R. 600. *Horn* v. *Horn,* Amb. R. 79. *Partridge* v. *Gopp,* id. 596. *McDermutt et al.* v. *Strong,* 4 Johns. C. R. 687. *Hadden* v. *Spader,* 20 Johns. R. 554.

The case of *McDermutt et al.* v. *Strong et al.,* 4 J. C. R. is very analogous to the case now before us, in principle. In April 1808, one Robertson, then being the owner of a ship, assigned it to W. M. upon trust to sell it, and, out of the proceeds, to pay certain debts of Robertson and to account for the surplus to Robertson himself, or to his assignees, if any in the mean time should be appointed under the insolvent law of New York. The plaintiffs severally obtained

judgments against Robertson in May, 1808, and, in May and June, 1808, levied their executions on the ship, as far as was consistent with the prior assignment ; but the sheriff returned he could not raise the money thereon by reason of the assignment from Robertson.    W. M. had transferred his trust to A., and the ship was was sold, by A., with the consent of the plaintiffs, in March, 1809, and the surplus proceeds, after satisfying the trusts, were secured by a note at six months, taken in part payment of the ship on its sale.    The note was deposited with the defendants, who had been made party by a supplemental bill by the consent of the plaintiffs in trust, to receive the money on it when due, and to hold it subject to the order of the court in the premises.    The deposit of the note with the defendants was on the 30th of March, 1809, and in the June following Robertson was discharged under the insolvent act, and the defendants in the supplemental bill were appointed his assignees.    The note was paid when due, and these defendants claimed the right to distribute the money as the assignees of Robertson, rateably among all his creditors.

Soon after the levy of the executions, and as early as July, 1808, the plaintiffs gave notice to A. of their judgments, executions and levy, and that they should look to him for the surplus, after satisfying the valid trusts which had priority to the lien of their executions.    Upon this state of facts the court held that the surplus of the debtor's interest in the ship, after satisfying the trusts for which it was assigned, could be reached in chancery by the creditors of the debtor while in the hands of the trustee, and that, as this remained undisposed of by the debtor, to whom it resulted, at the time of the levy and filing of the bill, their right could not be affected by a subsequent assignment, by the debtor, of that equity.    The money held in trust, as the surplus, was decreed to be paid to the plaintiffs.    See also *Bayard* v. *Hoffman,* 4 J. C. R. 450.

The orator, in the present case, has used every reasonable diligence to satisfy his judgment by a proceeding at law.    He has levied upon the land itself, conveyed to the trustee, but, as this had passed into the hands of a *bona fide* purchaser, without notice of the trust, he cannot be quieted in his title to the land itself, but he does thereby acquire an equitable

lien to the extent of his debt, upon the surplus of the pro- <span style="float:right">LAMOILLE,</span>
ceeds in the hands of the trustee resulting to Cochran, the <span style="float:right">August, 1839.</span>
debtor. Cochran himself could have enforced this trust
against Zachariah Whiting in chancery, and as the orator has <span style="float:right">Waterman v.</span>
acquired Cochran's equitable right, he may well do the same. <span style="float:right">Cochran et al.</span>
The case of *Donovan* v. *Finn et al.*, 1 Hopk. R. 59, to
which we have been referred by the counsel for the defen-
dants, is not like the present. In that case, the debtor had
property consisting of a debt due to him, and his creditors,
having obtained judgment at law against him, and having.
caused *a fieri facias* to be returned *nulla bona*, went into
chancery and asked that court to compel the debtor of his
debtor to make payment to him in satisfaction of the judg-
ment. The court, in that case, indeed held that there was
neither fraud, nor trust, nor accident, nor any other ingredi-
ent of equitable jurisdiction and dismissed the bill. The
subject of the suit was, as between the immediate parties,
purely in the character of a debt, and exclusively of legal jur-
isdiction, and hence the court thought that there was no.
foundation for equitable interference.

The case of *Fisher* v. *Leavitts*, 6 Vt. R. 328, is of the
same character.

The decree, then, in this case against Zachariah Whiting
will be,.that he pay to the orator, out of the surplus trust-
funds remaining in his hands, resulting to Cochran, the sum
of $71,68, it being the amount of the orator's claim at the
time of the levy of his execution and the interest thereon
from that date, together with the orator's taxable costs, to be
paid in one hundred and twenty days, and, in default there-
of, execution to issue ; the costs not to be paid from the trust-
fund, inasmuch as this defendant has wrongfully, in the
opinion of the court, denied the existence of the trust, and
founded his defence on the denial thereof.

NOTE.—The case of *Russell & Washburn* v. *Zachariah
Whiting et al.*, in chancery, came on for a hearing at the
same term of the court. The orators, judgment creditors of
Oliver Cochran, had caused their execution to be returned
*non est*, as to the personal property and body of Cochran,
and for want thereof had caused it to be extended on a por-
tion of the farm conveyed by their debtor to Zachariah
Whiting, but not till after the whole farm had been sold by

LAMOILLE,
August,
1839.
———
Russell
v.
Whiting et al.

him. In other respects the allegations, and proofs were substantially the same as in the case of *Waterman* v. *Cochran et al.*, ante 699.

The court decreed that an account should be taken and that the defendant, Zachariah Whiting, should pay to the orators the balance of the surplus of the proceeds from the sale of the farm remaining in his hands after the payment of the two debts which he had assumed to pay when he took his deed, and the debt which he had been decreed to pay Thomas Waterman, provided, upon taking the account the sum should not exceed the plaintiff's debt and interest, and, in that event, so much as would satisfy the plaintiff's claim. Zachariah Whiting however was allowed the one hundred and fifty dollars paid to the wife of Oliver Cochran, on the ground, that that payment was prior to the levy of the plaintiff's execution on the land, and also ten dollars paid for taxes on the land and for costs paid on one of the debts he had assumed to pay. He was also charged with a balance of interest on the trust-funds in his hands. He was also decreed to pay costs to the orators, but was not allowed to pay them, or retain his own costs out of the trust-fund on the ground that he had denied and resisted the trust. He was not allowed any compensation for the performance of the trust for the same reason.

The parties having taken the account by consent, according to the foregoing principles, a final decree was made accordingly.

In this, and the preceding case, Redfield, Chancellor, did not sit on account of ill health.